COMMONWEALTH OF PENNSYLVA-NIA, Acting by and Through the District Attorney of Blair County, Appellant.

**In re Randy BUCHANAN.**

Superior Court of Pennsylvania.

Argued Oct. 23, 2002.
Filed March 24, 2003.
Reargument Denied June 4, 2003.

Jackie R. Bernard, Assistant District Attorney, Altoona, for Commonwealth, appellant.

James R. Gilmore, Assistant District Attorney, Pittsburgh, for Commonwealth, amicus curiae.

Charles Kelly, Cannonsburg, for The Altoona Mirror, appellee.

Before MUSMANNO, LALLY–GREEN and KLEIN, JJ.

OPINION BY KLEIN, J.:

¶ 1 The Commonwealth appeals from the order of the Court of Common Pleas of Blair County denying its request to seal the autopsy report of Randall P. Buchanan from the general public and from the Altoona Mirror, a local newspaper. Because we find that the release of the report may substantially interfere with the ongoing investigation of Buchanan's homicide, and the Pennsylvania Coroner's Act does not mandate release under such circumstances, we reverse and remand. On remand, the trial court should make findings of fact and conclusions of law as to whether the release of the report would substantially impede, obstruct or interfere with the Commonwealth's homicide investigation.

¶ 2 Buchanan was found murdered in his apartment on or about June 21, 2001, and the homicide remains unsolved. On November 20, 2001, the Altoona Mirror made an official written request to the county coroner for the release of Buchanan's autopsy report. The Commonwealth petitioned the trial court for a preliminary injunction and a protective order that the report remain sealed. The trial court issued a temporary order sealing the report until a hearing was scheduled. Following a hearing, on March 14, 2002, the trial

court denied the Commonwealth's request for injunctive relief and directed that a copy of the autopsy report be made available to the Altoona Mirror within 24 hours.[1]

¶ 3 On appeal, the Commonwealth argues that the release of the autopsy report would permanently handicap the homicide investigation because the details of Buchanan's death, which are known only to the investigative team and the perpetrator of the crime, would be disclosed. The Commonwealth asserts that the report contains not only the cause of Buchanan's death, but also the facts and circumstances surrounding Buchanan's body as it was discovered in his apartment. At a hearing on this matter, the Commonwealth presented unrebutted testimony regarding how the release of the autopsy report would hinder its investigation, including alerting the perpetrator to what information is known and depriving the investigators of the opportunity to test the statements of alleged informants known only to the investigative team. (*See* N.T. Motion to Seal Coroner's Report, 2/8/02, at 4, 6, 9–10, 16, 61–63.)

¶ 4 The Altoona Mirror argues, and the trial court held, that regardless of whether the release of the autopsy report would impede the homicide investigation, it must be released pursuant to the Pennsylvania Coroner's Act, 16 P.S. §§ 1231–1253, and this Court's decision in *In re Dillon,* 449 Pa.Super. 559, 674 A.2d 735 (1996). We disagree. We therefore reverse and remand for the trial court's findings of fact and determination of whether the Commonwealth has demonstrated that the release of the autopsy report in this case would substantially hinder the ongoing homicide investigation. If so, then we direct that the report remain sealed for an appropriate period of time to be determined by the trial court to allow the Commonwealth to continue its investigation. The trial court also must set a date for the Commonwealth to return to court to reestablish its need that the report remain sealed. The burden remains on the Commonwealth to establish that releasing the report would substantially hinder the ongoing investigation.

 ¶ 5 We begin our analysis, as the trial court did, with the Pennsylvania Coroner's Act, which provides:

> Every coroner, within thirty (30) days after the end of each year, shall deposit all of his official records and papers for the preceding year in the office of the prothonotary for the inspection of all persons interested therein.

16 P.S. § 1251. Our Court has interpreted "all of [the coroner's] official records" in this provision as including autopsy reports. *See Dillon,* 674 A.2d at 739.[2] Thus, under Section 1251, the Blair County coroner's office was required to turn over to the prothonotary's office all of its official records for 2001, including autopsy reports, by January 31, 2002. In its opinion, the trial court recognized that although "[n]o [c]ourt wishes to 'hamper' criminal investigations," the Coroner's Act provides no exception for official records connected with criminal investigations. (Opinion & Order, 3/14/02, at 4.) The trial court also noted that because the report at issue here was prepared in June, it had effectively remained "sealed" for more than seven months under the statute, in addition to

---

1. On the same day that it filed its notice of appeal, the Commonwealth requested a stay of the March 14 order pending resolution of this appeal, which the trial court granted.

2. Our research reveals that *Dillon* is the only reported appellate decision interpreting Section 1251 of the Coroner's Act in this context.

the time that it remained sealed pursuant to the court's temporary order. Accordingly, the trial court held that because "[t]here is no authority in the law to keep this autopsy report under seal longer," the report must be released. (*Id.* at 5.) We disagree.

¶ 6 Although the Coroner's Act contains no explicit exception for records connected with criminal investigations, we do not believe that our legislature intended to strip from the common pleas courts their inherent right to ensure that the release of information will not jeopardize either the privacy rights of individuals or ongoing criminal investigations. If we were to adopt the Altoona Mirror's and the trial court's interpretation, then the length of time that an autopsy report could be withheld would vary with the time of the year in which the report is prepared. This is an unreasonable result. *See generally* 1 Pa.C.S.A. § 1922(1); *see also Commonwealth v. Masters,* 737 A.2d 1229, 1231 (Pa.Super.1999) (in attempting to ascertain meaning of statute, court presumes that legislature did not intend absurd or unreasonable result); *Commonwealth v. Berryman,* 437 Pa.Super. 258, 649 A.2d 961, 966 (1994) (court may consider practical consequences of particular interpretation of statute in order to effectuate "the most sensible construction possible").

■ ¶ 7 We note that there are many situations in which courts may issue injunctive relief in the form of protective orders to safeguard an articulated interest and need. A common situation, which is not provided by statute or rule but by common law, involves the courts' right to prevent the disclosure of information that could lead to the identification of a confidential informant, such as search or arrest

warrant affidavits. The courts use a balancing test, and frequently this information is kept under seal despite an accused's right to ensure that a warrant is properly based on probable cause. *See, e.g., Commonwealth v. Fenstermaker,* 515 Pa. 501, 530 A.2d 414, 420 (1987) (determination "regarding access to arrest warrant affidavits is one best left to the sound discretion of a trial court"); *PG Publ'g Co. v. Commonwealth,* 389 Pa.Super. 86, 566 A.2d 857, 862 (1989) (court must balance presumption that information is to be kept open to public against Commonwealth's need to keep information confidential so as not to jeopardize ongoing criminal investigation), *aff'd,* 532 Pa. 1, 614 A.2d 1106 (1992); *In re Affidavit of Search Warrant for 4011 Wilson Ave., Bethlehem, Pa.,* 42 Pa. D. & C.3d 467, 473 (C.P. Northampton County 1986) ("Courts have an inherent power to control their records and proceedings, and may deny access when appropriate.") (citing *Nixon v. Warner Comms., Inc.,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978)).[3]

■ ¶ 8 Another common situation involves the courts' right to keep certain judicial proceedings closed to the public. For example, in *Katz v. Katz,* 356 Pa.Super. 461, 514 A.2d 1374 (1986), this Court held that the press and the general public may be excluded from equitable distribution hearings. Although our courts have recognized a common law right of public access to judicial proceedings, that right is not absolute. *Id.* at 1377; *see Storms v. O'Malley,* 779 A.2d 548, 569 (Pa.Super.2001), *app. denied,* 570 Pa. 688, 808 A.2d 573 (2002). As the late Judge Wieand stated:

---

**3.** We note that appellate courts are not bound by decisions of the courts of common pleas. *Commonwealth v. Webster,* 452 Pa.Super. 258, 681 A.2d 806 (1996); *Jamison v. Concepts Plus, Inc.,* 380 Pa.Super. 431, 552 A.2d 265 (1988).

[T]he public may be "excluded, temporarily or permanently, from court proceedings or the records of court proceedings to protect private as well as public interests: to protect trade secrets, or the privacy and reputations [of innocent parties], as well as to guard against risks to national security interests and to minimize the danger of an unfair trial by adverse publicity." *In re National Broadcasting Co.,* [653 F.2d 609, 613 (D.C.Cir.1981)]. "These are not necessarily the only situations where public access ... can properly be denied. A bright line test has yet to be formulated. Meanwhile, the decision as to public access must rest in the sound discretion of the trial court." *Commonwealth v. Frattarola,* 336 Pa.Super. 411, 426, 485 A.2d 1147, 1155 (1984) (Wieand, J., concurring).

*Katz,* 514 A.2d at 1377–78; *see also R.W. v. Hampe,* 426 Pa.Super. 305, 626 A.2d 1218, 1222 (1993) (recognizing that divorce and juvenile proceedings may be closed to public to prevent parties' embarrassment and protect privacy interests). Likewise, although the United States Constitution provides for public trials, this Court has recognized that "even in the context of a criminal trial, where federal Constitutional guarantees both explicitly and implicitly apply, access rights of the public are subject to limitation by judicial discretion and necessity." *Stenger v. Lehigh Valley Hosp. Ctr.,* 382 Pa.Super. 75, 554 A.2d 954, 957 (1989).

¶ 9 We agree that absent a compelling need, autopsy reports are part of "all of [the coroner's] official records" that must be released within thirty days after the end of the year under Section 1251 of the Coroner's Act. We conclude, however, that our legislature did not intend to eliminate the courts' inherent power to limit the public's right of access to coroners' records "by judicial discretion and necessity."

*Stenger, supra; see also* 42 Pa.C.S.A. § 323 ("[E]very court shall have the power to make such rules and orders of court as the interest of justice or the business of the court may require."); *Commonwealth v. Chopak,* 532 Pa. 227, 615 A.2d 696, 703 (1992) (trial courts "ha[ve] inherent powers to enact such measures to effectuate the administration of justice"). Accordingly, we hold that an autopsy report may remain sealed beyond the statutory period if the Commonwealth demonstrates that the release of the report would substantially hinder an ongoing criminal investigation.

¶ 10 Furthermore, we find that *Dillon* does not compel a different result. In that case, the widow of a homicide victim filed a petition to re-exhume and reautopsy her husband's body and requested all materials used by the coroner in concluding that the death was a homicide, including the autopsy report. 674 A.2d at 736. Initially, the husband's death was ruled accidental, but following the first exhumation and reautopsy, a second coroner ruled his death a homicide. Due to these conflicting reports, the widow sought a second exhumation and reautopsy by three disinterested pathologists. *Id.* The Commonwealth then filed a cross-petition to seal the autopsy report on which the second coroner's homicide finding was based. Following hearings, the trial court denied the widow's requests for re-exhumation and reautopsy but ordered the release of the autopsy report pursuant to Section 1251 of the Coroner's Act. *Id.* at 737.

¶ 11 On appeal, this Court found that the right to possession and custody of the body belonged to the widow as the surviving spouse and that she had "provided the necessary justification to support her decision in this matter." *Id.* at 738. Because the widow had demonstrated "reasonable cause" to support her decision to re-ex-

hume and reautopsy her husband's body, this Court reversed the denial of the widow's petition. *Id.* This Court further held that because an autopsy report is an official record of the coroner's office and because Section 1251 makes no exception for records connected with criminal investigations, the report must be released. Thus, this Court affirmed the order directing that the report be released. *Id.* at 739.

¶ 12 Notably, this Court in *Dillon* was not faced with the concern raised here: that the release of information would impede, obstruct, or interfere with an ongoing criminal investigation. In fact, just the opposite was true, as Justice Montemuro [4] recognized:

> The Commonwealth's response to [petitioner's] request has relied on the argument that exhumation and reautopsy should be prohibited because there is an ongoing criminal investigation. *However, there has been no showing that to grant the petition here would in any way impede, obstruct or interfere with that investigation.* The Commonwealth has, in fact, conceded that exhumation and reautopsy would have no effect whatsoever on its efforts.

674 A.2d at 738 (emphasis added).[5] Thus, *Dillon* carefully left open the question we now decide in the negative: whether an autopsy report must be released, even where doing so would substantially hinder an ongoing criminal investigation.

¶ 13 Finally, we reject the Commonwealth's argument that the autopsy report is shielded from disclosure under the investigation exception of Pennsylvania's Right to Know Act, 65 P.S. §§ 66.1–66.4. The Right to Know Act provides that "[e]very public record of an agency shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania." 65 P.S. § 66.2. The definition of "public record," however, excludes "any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties." 65 P.S. § 66.1(2). The Commonwealth, without citing any legal authority, asserts that because the county coroner is part of the Commonwealth's investigative team, autopsy reports are precluded from public disclosure under this exception. (Appellant's Brief at 17–18.)

¶ 14 The only case addressing the Right to Know Act's applicability to a county coroner is *PG Publishing Co. v. County of Washington,* 162 Pa.Cmwlth. 196, 638 A.2d 422 (1994). In that case, the Commonwealth Court considered whether the cellular telephone bills of Washington County fell within the Right to Know Act's investigation exception. Each bill included the total dollar amount owed by the county as well as an itemization of calls made by each county official, including the coroner. *Id.* at 424.[6] The court held that under the

---

**4.** Retired Justice assigned to the Superior Court.

**5.** The fact that the quoted passage refers only to the re-exhumation and reautopsy, and not the release of the autopsy report, is of no consequence. In *Dillon,* the Commonwealth clearly argued that "almost all of the material, both documentary and testimonial, related to [the husband's] death [was] privileged" because of the ongoing homicide investigation. 674 A.2d at 737. Thus, the Commonwealth in

*Dillon* made the same argument asserted here, but it failed to show that granting the petition "would in any way impede, obstruct or interfere with that investigation." *Id.* at 738.

**6.** The court found that the phone bills, including the itemizations, were "public record[s]" under Section 66.1(2) of the Act because they were "accounts and/or vouchers evidencing a contract and deal with the use of County equipment." *Id.* at 426..

Act's investigation exception, the district attorney and drug task force should be permitted to redact any phone numbers from the itemizations that concerned "'the institution, progress or result of an investigation.'" *Id.* at 427. Likewise, the court held that the sheriff and coroner should be permitted to redact under that exception because those individuals "touch upon the 'criminal element' in their work" and disclosure may pose "some risk of harm to them in the performance of their duties." *Id.* at 427–28 (citation omitted). However, because the sheriff and coroner failed to testify to any specific investigation wherein a call made would reveal "'the institution, progress or result of an investigation,'" they were precluded from redacting any numbers. *Id.*

¶ 15 Even in light of *County of Washington's* finding that the coroner's calls could be subject to the Right to Know Act's investigation exception, we find no support for the Commonwealth's position that the Act applies to autopsy reports. Unlike the phone bills in *County of Washington,* an autopsy report does not fall squarely within the definition of a "public record" under the Act. It is clearly not an "account, voucher or contract dealing with the receipt or disbursement of funds," nor is it a "minute, order or decision" fixing personal or property rights. 65 P.S. § 66.1(2). Furthermore, the release of coroners' official records is expressly covered by a separate, more specific statute. *See* 16 P.S. § 1251. Thus, we agree with the trial court that the Right to Know Act is inapplicable here.

¶ 16 In sum, we hold that there is no general governmental privilege to seal autopsy reports, even where a criminal investigation is ongoing, and, in fact, such reports must be released within thirty days after the end of the year under Section 1251 of the Coroner's Act. However,

there are circumstances in which the Commonwealth will demonstrate that the release of an autopsy report would substantially impede, obstruct, or interfere with an ongoing investigation. Then it is within the courts' inherent powers to either seal the report in its entirety or redact portions of the report before releasing it.

¶ 17 Although there is no bright-line test for determining whether the release of information would substantially hinder a criminal investigation, it is not enough for the Commonwealth merely to assert that an investigation is ongoing. The Commonwealth must make a specific showing that the release of the report would have a substantial negative impact on its investigation—for example, by keeping witnesses from coming forth or preventing investigators from verifying information that they receive from informants.

¶ 18 We also note that the autopsy report cannot be sealed indefinitely. The trial court should seal the report only for a finite period of time and require the Commonwealth to return after that time to re-establish that the investigation is continuing and that release of the report would still substantially hinder the investigation. The burden always remains on the Commonwealth to demonstrate why the autopsy report should remain sealed.

¶ 19 Because the trial court in this case held that the Coroner's Act mandates the release of the autopsy report regardless of whether such release would jeopardize the ongoing investigation, it failed to make articulated findings of fact that would allow us to determine whether the Commonwealth has made the requisite showing. Accordingly, we must remand for the trial court to conduct an *in camera* review of the documents involved and determine whether the Commonwealth has established that the release of the autopsy report would substantially hinder its in-

vestigation. The trial court must make sufficient findings of fact (without revealing the specifics of the report) so that we may conduct a meaningful appellate review. *See PG Publ'g Co. v. Commonwealth*, 532 Pa. 1, 614 A.2d 1106, 1109–10 (1992). The trial court also must determine whether there is any less restrictive way to protect the investigation than sealing the report in its entirety.

¶ 20 If the trial court finds that the Commonwealth has made the requisite showing, then we direct that the autopsy report remain sealed for such period of time as the court deems appropriate before the Commonwealth must return to court to re-establish its need that the report remain sealed.

¶ 21 Order reversed. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

¶ 22 MUSMANNO, J., files a Dissenting Statement.

### DISSENTING STATEMENT BY MUSMANNO, J.:

¶ 1 I respectfully dissent from the majority's conclusion that it is within the courts' inherent powers to seal a coroner's report where the Commonwealth establishes that release of the report would interfere with an ongoing criminal investigation. Although I am extremely reluctant to impede a criminal investigation, I am constrained to agree with the trial court that the Coroner's Act, 16 P.S. §§ 1231–1253, explicitly mandates the filing of all coroners' reports within 30 days of the end of each year and provides no exceptions for official records connected with criminal investigations. This Court cannot judicially engraft an amendment to that statute.

¶ 2 However, I would respectfully recommend that our Legislature revisit the Coroner's Act to consider its ramifications on criminal investigations.

¶ 3 Accordingly, I dissent.