J-A09029-20

2020 PA Super 128

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WAYNE RICHARD GLENN | : | |
| | : | |
| Appellant | : | No. 1595 WDA 2019 |

Appeal from the Judgment of Sentence Entered October 4, 2019
In the Court of Common Pleas of Mercer County Criminal Division at
No(s):  CP-43-CR-0000158-2019

BEFORE:   SHOGAN, J., MURRAY, J., and STRASSBURGER, J.[*]

OPINION BY MURRAY, J.:                              **FILED MAY 29, 2020**

Wayne Richard Glenn (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of driving under the influence of metabolites of a controlled substance (DUI-metabolite).[1]  After careful consideration, we vacate the judgment of sentence and discharge Appellant.[2]

The trial court set forth the relevant facts as follows:

> On the evening of [November 15, 2018], police were dispatched in response to a call from Appellant's father, who had found Appellant's vehicle parked in the driveway of the father's

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3802(d)(1)(iii).

[2] The Commonwealth initially filed a brief advocating for affirmance; however, on April 20, 2020, the Commonwealth filed an application requesting to withdraw its brief based on its subsequent determination that it agreed with Appellant.  We grant the application.

home but could not find Appellant. Upon the arrival of the police, Appellant was observed climbing up a steep hill that he had previously fallen down.

Appellant stated that he had crossed the road at the bottom of the driveway leading to his parents' home, intending to retrieve their mail from their rural mailbox on the other side of the road. Behind the mailbox was a steep embankment, and in the process of getting the mail, he fell down [the] embankment and struggled at length to climb back up the steep, slippery embankment.

Appellant showed significant signs of impairment and was eventually arrested by the police and taken [to] a local hospital for a voluntary blood draw. Appellant's blood contained alcohol, Fentanyl, and Norfentanyl, which is a metabolite of Fentanyl.[3] As explained by Appellant, he [] had a surgical procedure [performed] on his back the previous day and had been prescribed a Fentanyl patch that was placed on his arm.[4] Appellant stated that he had been wearing the Fentanyl patch the entire day of his arrest.[5]

[Laboratory testing of Appellant's blood revealed that he had a blood alcohol content] of .23%. Appellant testified [at trial] that he arrived at his parents' home long before his vehicle was

_____

[3] It is undisputed that Norfentanyl is a metabolite of Fentanyl, the latter of which is classified as a Schedule II controlled substance. **See** 35 P.S. § 780-104(2)(ii)(6). The term "metabolite" is not defined by statute. However, the term is commonly defined as "any substance produced in the process of metabolism." SCHMIDT'S ATTORNEY'S DICTIONARY OF MEDICINE M-157 (2004); **accord Vereen v. Pa. Bd. of Prob. & Parole**, 515 A.2d 637, 639 n.4 (Pa. Commw. 1986) (explaining that a controlled substance "metabolite" is the substance produced by the body while it is metabolizing the "parent" controlled substance). In the human body's process of metabolizing – or breaking down – Fentanyl, Norfentanyl is produced.

[4] The Commonwealth does not dispute that Appellant had a medical prescription for the Fentanyl patch.

[5] Appellant does not dispute that he had Fentanyl and Norfentanyl in his blood at the time of his arrest.

discovered, and during the intervening period of time, he drank copious amounts of beer in his parents' garage without anybody's knowledge. Appellant explained that he wanted to build up his courage before informing his parents that his father had incurable cancer.

Trial Court Opinion, 12/7/19, at 2 (footnotes added).

The Commonwealth charged Appellant with DUI-metabolite, as well as two additional DUI counts under separate statutory sections, and three summary offenses. The matter proceeded to a non-jury trial, at the close of which the trial court found Appellant guilty of DUI-metabolite, but acquitted him of the remaining charges.[6]

On October 4, 2019, the trial court sentenced Appellant to serve 90 days to 1 year in a county correctional facility, followed by two years of probation. The court also imposed a fine of $1,000 and ordered Appellant to pay court costs. Appellant filed a timely notice of appeal, followed by a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) concise statement.

Appellant now presents one question for our review: "Should 75 Pa.C.S.A. § 3802(d)(1)(iii) be read so as to not criminalize driving with the metabolite of a medically prescribed controlled substance, since the legislature did not criminalize driving under the influence of the prescribed controlled substance itself?" Appellant's Brief at 7.

---

[6] The trial court found reasonable doubt as to when and where Appellant had consumed alcohol, and when he had last driven his car. It also found that there was no evidence to establish that Appellant had driven recklessly or was unlawfully intoxicated in public.

Appellant's issue requires us to engage in statutory interpretation; accordingly, "we must interpret the relevant statutory provisions to ascertain the legislative intent. Because we are addressing a question of law, our standard of review is *de novo* and our scope is plenary." ***Commonwealth v. Griffith***, 32 A.3d 1231, 1235 (Pa. 2011); ***see also*** 1 Pa.C.S.A. § 1921(a).

The applicable statute reads:

**(d) *Controlled substances.*** – An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

**(1)** There is in the individual's blood any amount of a:

**(i)** Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act;

**(ii)** Schedule II or Schedule III controlled substance, as defined in the Controlled Substance, Drug, Device and Cosmetic Act, which has not been medically prescribed for the individual; or

**(iii)** metabolite of a substance under subparagraph (i) or (ii).

75 Pa.C.S.A. § 3802(d)(1).[7]

In this case, the trial court held that under the plain language of subsection (d)(1)(iii), ***supra***, it is *per se* illegal for an individual to operate a

---

[7] We note pending legislation proposing an amendment to 75 Pa.C.S.A. § 3802(d)(1)(i) to include the following language at the end of that subsection: "EXCEPT MARIJUANA USED LAWFULLY IN ACCORDANCE WITH THE ACT OF APRIL 17, 2016 (P.L. 84, NO. 16), KNOWN AS THE MEDICAL MARIJUANA ACT[.]" H.B. 2337 (introduced March 10, 2020) (capitalization in original).

motor vehicle with any amount of the metabolite Norfentanyl in the individual's blood, even if, as here, that metabolite is produced from medically prescribed Fentanyl. *See* Trial Court Opinion, 12/7/2019, at 5. The court stated:

> The legislature expressly chose to include in subparagraph [(d)(1)](ii) the language, "which has not been medically prescribed," but the legislature chose not to include that same language in subparagraph (iii) when prohibiting metabolites of Schedules I, II, or III controlled substances. … Also, the legislature's use of the disjunctive "or" between subparagraphs (ii) and (iii), and the legislature's decision to structure the statute so that there are alternative subparagraphs, shows an intent that they stand alone to the extent possible.

*Id.* (paragraph break omitted).

At the outset, we recognize the directive of the Pennsylvania Supreme Court in ascertaining legislative intent:

> In general, the best indication of legislative intent is the plain language of the statute. *Commonwealth v. Fithian*, 599 Pa. 180, 961 A.2d 66, 74 (Pa. 2008). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). When the statutory text is not explicit, we may consider, *inter alia*, the mischief to be remedied by the statute, the object to be attained, and the consequences of a particular interpretation. 1 Pa.C.S. § 1921(c). We may not add words or phrases in construing a statute unless the added words are necessary for a proper interpretation, do not conflict with the obvious intent of the statute, and do not in any way affect its scope and operation. 1 Pa.C.S. § 1923(c); [*Commonwealth v.*] *Hoke*, [962 A.2d 664,] 667 [(Pa. 2009)]. … Finally, we presume that the General Assembly does not intend a result that is absurd or unreasonable. 1 Pa.C.S. § 1922(1); *Commonwealth v. Bavusa*, 574 Pa. 620, 832 A.2d 1042, 1050 (Pa. 2003).

- 5 -

***Commonwealth v. Segida***, 985 A.2d 871, 874-75 (Pa. 2009). Additionally, "every portion of statutory language is to be read together and in conjunction with the remaining statutory language, and construed with reference to the entire statute as a whole." ***Commonwealth v. Office of Open Records***, 103 A.3d 1276, 1285 (Pa. 2014) (citations omitted).

Appellant emphasizes that when he was arrested, he had on his person a lawfully-obtained prescription for the Fentanyl patch, which caused Norfentanyl to be released into his bloodstream while he was metabolizing the Fentanyl. ***See*** Appellant's Brief at 9. Appellant asserts:

> The trial court constrained to read section 3802(d)(1)(iii) to proscribe driving while any amount of a metabolite of a prescribed drug is in [a d]efendant's blood, a reading which would appear to be inconsonant with the legislature's intent not to criminalize driving with the prescribed controlled substance itself [in the motorist's blood, *i.e.*, in reference to section (d)(1)(ii)].

***Id.***; ***see also*** 75 Pa.C.S.A. § 3802(d)(1)(ii) (providing that an individual cannot be convicted of driving under the influence of a Schedule II or III controlled substance if such substance had "been medically prescribed for the individual"). Appellant argues that the trial court's interpretation of the statute produces an absurd result which was not intended by the legislature. ***See*** Appellant's Brief at 10. He further contends that the trial court erred in failing to (1) read the statute as a whole; and (2) construe any ambiguities of the penal statute in his favor as the accused. ***See id.*** at 9. We agree.

Upon review, we conclude that the trial court's interpretation of subsection 3802(d)(1)(iii) leads to an absurd and unreasonable result, which

we presume the legislature did not intend. ***See*** 1 Pa.C.S.A. § 1922(1); ***see also In re Buchanan***, 823 A.2d 147, 150 (Pa. Super. 2003) (emphasizing that a court "may consider [the] practical consequences of [a] particular interpretation of [a] statute in order to effectuate the most sensible construction possible."). If an individual has a medical prescription for a controlled substance such as Fentanyl, it follows that the individual may lawfully have metabolites produced by the controlled substance in their bloodstream while their body is metabolizing the Fentanyl. We do not perceive a sensible reading of the **entirety** of the text of section 3802(d)(1) to support the construction of subsection (d)(1)(iii) as applied by the trial court. ***See Commonwealth v. Duncan***, 321 A.2d 917, 919 (Pa. 1974) (explaining that although criminal statutes must be strictly construed, this "does not require that the words of a criminal statute be given their narrowest meaning," and stating that "courts have a duty to see to it that the legislative intent is not thwarted by a construction which is unreasonably rigid and inflexible"). We cannot conclude that the legislature intended to permit an individual to lawfully operate a motor vehicle while a medically prescribed "parent" Schedule II or III controlled substance is in their bloodstream (*i.e.*, under subsection (d)(1)(ii)), but simultaneously prohibit this same individual from lawfully operating a vehicle while a metabolite of the **same** substance is in their bloodstream (*i.e.*, under subsection (d)(1)(iii)).

We are cognizant that "it is not for the courts to add, by interpretation, to a statute, a requirement[, or an exception,] which the legislature did not see fit to include." **Commonwealth v. Wright**, 14 A.3d 798, 814 (Pa. 2011) (citation omitted). However, the language of subsection 3802(d)(1)(iii) must be read in conjunction with the remainder of the statute, including the language in subsection 3802(d)(1)(ii), which provides an exception when the Schedule II or III controlled substance is medically prescribed. **See Office of Open Records**, **supra**. Further, we are unpersuaded by the trial court's reasoning that the legislature's use of the disjunctive "or" between subsections 3802(d)(1)(ii) and (iii) compels an opposite result. **See id**.

Finally, Appellant is correct that "under the rule of lenity, penal statutes must be strictly construed in favor of the defendant." **Commonwealth v. Smith**, 221 A.3d 631, 636 (Pa. 2019); **see also Commonwealth v. Giulian**, 141 A.3d 1262, 1265 (Pa. 2016) (stating that if an ambiguity exists in a penal statute, it must be interpreted in a light most favorable to the accused, and where doubt exists, the accused should receive the benefit of the doubt).

Consistent with the foregoing, Appellant's conviction of DUI-metabolite was unlawful, and for this reason, we vacate the judgment of sentence.

Judgment of sentence vacated. Appellant discharged. Commonwealth's application for relief granted.

Judge Shogan joins the Opinion.

Judge Strassburger files a Concurring Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/29/2020