674 A.2d 735

**In re Martin T. DILLON, Deceased.**

**Appeal of Patricia SCHER, Michael Dillon, and Suzanne R. Dillon.**

Superior Court of Pennsylvania.

Argued Jan. 11, 1996.

Filed Feb. 26, 1996.

Reargument Denied May 7, 1996.

Thomas A. Sprague, Philadelphia, for appellant.

Peter G. Loftus, Waverly, for Lawrence Dillon, participating party.

John M. Popilock, Deputy Attorney General, Harrisburg, for Commonwealth, participating party.

Before KELLY and POPOVICH, JJ., and MONTEMURO, J.*

MONTEMURO, Judge.

These cross appeals lie from an order of the Court of Common Pleas of Susquehanna County denying an emergency

* Retired Justice assigned to Superior Court.

petition for disinterment and reautopsy of the deceased, Martin T. Dillon, filed by petitioner Patricia Dillon Scher, supported by intervenors Suzanne R. Dillon and Michael Dillon, and granting the disclosure to petitioner of an autopsy report in the possession of the Commonwealth.

On June 2, 1976, the deceased, Martin T. Dillon, died from a shotgun blast to the chest. The gun belonged to Stephen Scher, M.D., a close friend with whom the deceased had been shooting clay pigeons at a hunting lodge owned by the Dillon family. The petitioner herein, Patricia Dillon Scher, is the widow of the decedent and the wife of Stephen Scher. The death was ruled accidental by the [then] coroner pursuant to autopsy findings.

In April of 1995, pursuant to legal proceedings initiated by the coroner,[1] the body of Martin Dillon was exhumed, reautopsied and reburied. In June, a public announcement was released by the [current] coroner to the effect that the manner of Martin Dillon's death had been homicide. The basis of the coroner's conclusion was not revealed, nor was the report of the second post mortem examination made public. At no point during the course of these proceedings was an appeal taken, or emergency injunction or intervention sought by Patricia Dillon Scher.[2] Rather, in August, the instant petition was filed,[3] requesting that the body of petitioner's late husband be disintered and reautopsied, and that preliminary discovery in aid of the reautopsy be granted. The petition, supported by Suzanne Dillon and Michael Dillon, the children of the deceased and petitioner, grounded the request on

1. The coroner's petition for exhumation was preceded by similar legal action commenced by Martin Dillon's father, Lawrence Dillon, and opposed by Patricia Dillon Scher and her children. Lawrence Dillon has filed an Appellee's Brief in this matter.

2. The failure to appeal or intercede in the proceedings earlier is mentioned by appellees and the trial court but regarded by nobody except Lawrence Dillon as an impediment to this appeal. In view of our disposition of this case, and as a matter of judicial economy, we will address the merits now.

3. The emergency nature of the matter derives from the fact that having once been disintered, the body would begin to decompose more rapidly than before exposure to air.

assertions that the publicity surrounding the coroner's announcement that the death had been a homicide necessarily resulted in speculation that Stephen Scher, petitioner's husband, was responsible for Martin Dillon's demise. Such speculation, it was argued, resulted in great personal anguish to the petitioner, had caused her severe emotional distress as well as possible loss of future income, and only a reautopsy by three (named) disinterested pathologists, aided by certain items of discovery would resolve the difficulties caused by the coroner's conclusion.

After hearings, the trial court denied the petition in part on the basis that the standard for granting an exhumation had not been met, but granted petitioner's request that the autopsy report be disclosed. Both petitioner and the Commonwealth now appeal from the trial court's order.

■ Petitioner first argues that the trial court applied the wrong standard in denying her request for exhumation and reautopsy. The trial court based its decision on the holding in *Commonwealth v. Marshall,* 287 Pa. 512, 135 A. 301 (1926). There our Supreme Court stated:

> Without reciting the averments of the petition and answer, it is sufficient to say, the former did not state facts which **imperatively required** that its prayer be granted, and, when the averments of the answer are taken into consideration, the matter appears as one entirely for the discretion of the tribunal.

*Id.* at 530, 135 A. at 307 (emphasis supplied).

The trial court concluded that the exhumation was not imperatively required because the sole basis for petitioner's prayer for relief was jeopardy to her future income, which was dependent on Stephen Scher, and because the children's prayer for relief showed no injury to themselves or to their mother which an exhumation and reautopsy would definitively redress. The Commonwealth adopts this position with the additional contention that because there is an on-going criminal investigation almost all of the material, both documentary and testimonial, related to Martin Dillon's death is privileged; thus,

the higher standard, that the need for exhumation be shown as "imperatively required," is necessary but has not been met. Petitioner contends that *Marshall* is distinguishable on its facts, and that the proper standard was enunciated by this court in *Wawrykow v. Simonich,* 438 Pa.Super. 340, 652 A.2d 843 (1994), where it was concluded that a showing of "reasonable cause" was sufficient to justify exhumation.

In *Marshall,* the request of a convicted murderer who sought to have the body of his victim exhumed was denied. The Court observed that the procedure was not imperatively required as "the petition [for exhumation and autopsy] fails to disclose what it was proposed to develop through an autopsy more than had already been shown by the examination of the body made by the coroner's physician." Thus, not even a "reasonable cause" standard would have been met by the proffered explanation for the exhumation and autopsy. Moreover, the Court noted that the close relatives of the deceased had been given no notice of the request, which omission, standing alone, would have sufficed to warrant denial of the petition.

In *Wawrykow,* exhumation was sought in order that DNA testing might be performed to determine the paternity of a child, on whose behalf a claim had been lodged against the decedent's estate. The Superior Court held that the averments of the exhumation petition, in conjunction with the evidence of the proposed DNA testing, supplied the reasonable cause necessary to warrant disinterment.

In actuality, the seminal case in Pennsylvania on the right to disinter and reinter bodies is the Supreme Court's decision in *Pettigrew v. Pettigrew,* 207 Pa. 313, 56 A. 878 (1904), which concerned a widow's petition to move her husband's body from the cemetery in which it was buried to another containing the grave of a daughter. Because of space considerations, the daughter's body could not be moved to where the husband was buried. Relatives of the husband sought to enjoin the reinterment. The Court found that reasonable cause was necessary for reinterments, and that the widow had made the necessary showing. *See also, Leschey v. Leschey,* 374 Pa. 350, 97 A.2d

784 (1953). *Marshall* does not mention *Pettigrew*, but is not necessarily inconsistent with it, first because the appellant supplied no reason of whatever caliber to justify his request, and second because the denial of the request for exhumation and autopsy was without prejudice, permitting appellant to reapply for the procedure with a reason advanced. We do not know what standard would have then been applied, because appellant chose not to renew his request.[4]

What is common to these cases, *Marshall* excepted, is that if reasons were given for the exhumation at all, they were not speculative—the objective would definitively solve the particular problem at issue. In *Marshall*, the reasons were not only such as would not imperatively require exhumation, they were, for all intents and purposes, nonexistent. *See also Commonwealth v. Kivlin*, 267 Pa.Super. 270, 406 A.2d 799 (1979). This brings us to petitioner's second and third claims which are the obverse and reverse of the same issue. She argues that the trial court erred in finding that the loss of future income was the sole basis of her petition, and that the claims actually made did supply reasonable cause for granting her request.

Petitioner advanced as specific reasons for exhumation and reautopsy the emotional effects and/or (putative) financial reverses attributable to the homicide announcement. Whether the trial court erred in imputing to her only the latter is of no importance in itself, in light of the fact that these reasons, whether ascribed to petitioner or her children, were determined by the trial court, as a matter of its discretion, to be insufficient. We conclude that in so finding the trial court abused its discretion: the testimony as to the emotional/psychological effects of the April autopsy findings, and the economic effects of the homicide announcement do constitute reasonable cause.

Further, our Supreme Court has determined that the paramount right to possession and custody of a body and the

4. It might also be argued that as a criminal matter *Marshall* requires a higher standard. No charges have yet been filed relative to Martin Dillon's death, and no argument has been advanced that if such charges are filed, the petitioner will be accused.

concomitant right to control burial or other disposition rests with the surviving spouse of the deceased. *Pettigrew, supra. See also, Leschey, supra.* Petitioner, therefore, is invested with that right, and has, in addition, provided the necessary justification to support her decision in this matter. The Commonwealth's response to her request has relied on the argument that exhumation and reautopsy should be prohibited because there is an ongoing criminal investigation. However, there has been no showing that to grant the petition here would in any way impede, obstruct or interfere with that investigation. The Commonwealth has, in fact, conceded that exhumation and reautopsy would have no effect whatsoever on its efforts. Accordingly, having supplied reasonable cause, petitioner, whose right it is to direct such matters, should be permitted to do so.

■ Moreover, in its role as cross-appellant, the Commonwealth's major contention is that the autopsy report on which the finding of homicide was based is protected by governmental privilege, as evidenced by the trial court's prior numerous rulings, and should not be released.[5] All of the Commonwealth's arguments on this point, however, are mooted by 16 P.S. § 1251, which reads as follows, "Every coroner, within thirty (30) days of the end of each year, shall deposit all of his official records and papers for the preceding year in the office of the prothonotary for the inspection of all persons interested therein." We note that the statute makes no exceptions for records connected with criminal investigations.

This same statutory provision controls the result of any examination of the remaining issue raised by petitioner and

5. The Commonwealth also argues that the report should not be disclosed because the petition reflects not the effect of the homicide announcement on the feelings/economics of Martin Dillon's family, but rather represents only Stephen Scher's attempt to conduct discovery as to the evidence against him prior to any charges being brought. While it is noted that no objection to the second autopsy was made until it became known that the results were adverse to Stephen Scher's interests; that he has underwritten the legal proceedings in this matter; and that neither he nor petitioner has appeared at any of the hearings, none of these factors affects petitioner's status as Martin Dillon's surviving spouse.

that claimed by the Commonwealth. Petitioner argues that the materials, other than the autopsy report, used by the coroner and his designated pathologist in concluding that the death of Martin Dillon was a homicide, and sought in her petition for reautopsy, are not privileged documents. They are, however, official records of the coroner's office and thus covered by the statute cited above. Further, the billing to the coroner for the pathologist's services, which the Commonwealth in its first issue claims were wrongly released, also fall under the rubric of coroner's official records. Thus, contentions that these documents were wrongly released or wrongly withheld are also moot.

Accordingly, the trial court's order denying petitioner's request for exhumation and autopsy and for discovery is hereby reversed; the ordered disclosure of the autopsy report is affirmed.

Jurisdiction is relinquished.