880 A.2d 568

**COMMONWEALTH of Pennsylvania, Acting by and Through the DISTRICT ATTORNEY OF BLAIR COUNTY**

**In re Randy Buchanan**

**Appeal of the Altoona Mirror.**

Supreme Court of Pennsylvania.

Argued Sept. 20, 2004.

Decided Aug. 15, 2005.

Charles Kelly, Esq., for The Altoona Mirror.

David C. Gorman, Esq., Jackie Atherton Bernard, Hollidaysburg, for Commonwealth of Pennsylvania.

James Robert Gilmore, Esq., Pittsburgh, for Pennsylvania District Attorneys Association.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice CASTILLE.

This Court granted discretionary review to determine whether an autopsy report of a homicide victim, which a county's Coroner is required to disclose to the public under the Pennsylvania Coroner's Act ("Act"), *see* 16 P.S. §§ 1231–1253, can be sealed by court order at the Commonwealth of Pennsylvania's request because of an ongoing police criminal investigation of the homicide. The trial court, finding that no authority existed to seal the autopsy report, denied the Commonwealth's request for a permanent seal and ordered that a copy of the report be made available to appellant newspaper, The Altoona Mirror. A divided panel of the Superior Court

reversed and remanded, holding that the autopsy report may be sealed beyond the statutory period, where the Commonwealth demonstrates that release of the report would substantially hinder an ongoing criminal investigation. For the following reasons, we affirm.

On or about June 21, 2001, Randall P. Buchanan was found murdered in his apartment. Currently, the murder remains unsolved and a police investigation continues. Patricia Ross, the Blair County Coroner, preliminarily classified Buchanan's death as a homicide at the crime scene. Subsequently, Dr. Harold Cottle, a forensic pathologist, conducted an autopsy of the body and authored the autopsy report at issue in this case. On November 20, 2001, appellant submitted a written request to Ross for the release of Buchanan's autopsy report. However, on January 28, 2002, the Blair County District Attorney's Office filed a petition for a preliminary injunction and protective order seeking to seal the autopsy report. In response to the Commonwealth's petition appellant filed a motion to intervene and a motion to deny the Commonwealth's petition. The trial court then issued a temporary injunction sealing the report pending a hearing on the issue of whether the report should remain sealed.

Following a hearing, the trial court denied the Commonwealth's petition for a permanent seal and ordered that a copy of the autopsy report be turned over to appellant within twenty-four hours. In its opinion, the trial court found that "[t]here is no authority in the law to keep this autopsy report under seal longer," citing Section 1251 of the Act. Trial ct. slip op. at 5. Specifically, the trial court held that Section 1251 did not authorize sealing an autopsy report from the public's review in order to avoid the possible effect disclosure would have on an ongoing criminal investigation. The Commonwealth filed a timely notice of appeal to the Superior Court and, additionally, requested a stay pending resolution of its appeal. The trial court granted the stay.

In a published opinion by the Honorable Richard Klein, a panel majority of the Superior Court reversed and remanded. The panel majority held that "an autopsy report may remain

sealed beyond the statutory period if the Commonwealth demonstrates that the release of the report would substantially hinder an ongoing criminal investigation." *In re Randy Buchanan,* 823 A.2d 147, 151 (Pa.Super.2003). The panel remanded for the trial court to determine whether the Commonwealth could demonstrate that release of the autopsy report in this case would negatively impact the ongoing homicide investigation.

In a dissenting statement, the Honorable John L. Musmanno disagreed with the panel majority's determination that common pleas courts possessed inherent powers to seal a coroner's report where the Commonwealth can establish that release of the report would jeopardize an ongoing criminal investigation. Judge Musmanno based his opinion on the constraints he felt were imposed by the plain language of Section 1251 of the Act, and objected to what he termed the panel majority's "judicial engrafting" of an amendment to the statute. *Id.* at 154. The dissent recommended, however, that the General Assembly reconsider Section 1251 due to its possible detrimental impact on criminal investigations.

Appellant filed a petition for allowance of appeal challenging the panel's decision that common pleas courts have the inherent power to seal an autopsy report beyond the statutory period set forth in Section 1251 of the Act in circumstances where the Commonwealth can demonstrate that release of the report would substantially hinder an ongoing criminal investigation. This Court granted allocatur, and we now affirm.

■ The claim asserted by appellant implicates statutory construction, which is a question of law; therefore, this Court's standard of review is plenary. *See Hazleton Area School Dist. v. Zoning Hearing Bd.,* 566 Pa. 180, 778 A.2d 1205, 1210 (2001). The polestar of statutory construction is to ascertain and effectuate legislative intent. 1 Pa.C.S. § 1921(a); *see also Hannaberry HVAC v. Workers' Compensation Appeal Board (Snyder, Jr.),* 575 Pa. 66, 834 A.2d 524, 531 (2003). In following this directive, we acknowledge that "when the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of

legislative intent." *Hannaberry HVAC*, 834 A.2d at 531; 1 Pa.C.S. § 1921(b). This Court is also mindful, however, that in ascertaining legislative intent, there is a presumption that the General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable. 1 Pa.C.S. § 1922(1).

■ Section 1251 of the Pennsylvania Coroner's Act, entitled "Official records of coroner," provides in full:

> Every coroner, within thirty (30) days after the end of each year, shall deposit all of his official records and papers for the preceding year in the office of the prothonotary for the inspection of all persons interested therein.

16 P.S. § 1251. Notably, the Act addresses itself only to the duties of coroners, and not to judicial proceedings or other matters. Under this statutory mandate, Coroner Ross was required to submit all of her official records and papers for 2001 to the Blair County prothonotary's office by January 31, 2002. Both the trial court and the Superior Court panel relied on the prior Superior Court panel decision of *In re Martin Dillon*, 449 Pa.Super. 559, 674 A.2d 735 (1996), for the proposition that the phrase "all of [coroner's] official records and papers" in Section 1251 encompasses autopsy reports. This interpretation is certainly reasonable, as the phrase "official records and papers" is broadly stated, *see* 1 Pa.C.S. § 1921(a),(b), and the parties do not dispute that autopsy reports are covered material. Accordingly, pursuant to this provision, Coroner Ross was required to "deposit" Buchanan's autopsy report in the Blair County prothonotary's office on January 31, 2002.

In interpreting Section 1251, the Superior Court panel majority noted that the provision contained no express exception for records connected with criminal investigations. The majority nevertheless reasoned that "we do not believe that our legislature intended to strip from the common pleas courts their inherent right to ensure that the release of information will not jeopardize either the privacy rights of individuals or ongoing criminal investigations." *Buchanan*, 823 A.2d at 150.

The panel majority cited two analogous situations where the common law has recognized that trial courts have the inherent

power to issue injunctive relief in the form of protective orders. The first situation involves a defendant's access to search or arrest warrant affidavits, where a common pleas court has the power to prevent the disclosure of the identification, or information that could lead to the identification, of a confidential informant. *See Buchanan,* 823 A.2d at 150; *see, e.g., Commonwealth v. Fenstermaker,* 515 Pa. 501, 530 A.2d 414, 420 (1987) ("[t]he decision regarding access to arrest warrant affidavits is one best left to the sound discretion of a trial court"); *P.G. Publishing Co. v. Commonwealth,* 389 Pa.Super. 86, 566 A.2d 857, 862 (1989) ("When the release of documents will seriously jeopardize an ongoing investigation by the police, the documents ... may be sealed from public access until the conclusion of the investigation and after arrest."), *aff'd,* 532 Pa. 1, 614 A.2d 1106 (1992).

The second situation at common law cited by the panel majority involves a trial court's inherent power to keep certain judicial proceedings closed to the public. *See Buchanan,* 823 A.2d at 150–51; *see, e.g., Katz v. Katz,* 356 Pa.Super. 461, 514 A.2d 1374, 1377 (1986) (common law rule which confers public right of access to judicial proceedings is not absolute). The majority relied upon a prior Superior Court panel decision for the principle that "even in the context of a criminal trial, where federal Constitutional guarantees both explicitly and implicitly apply, access rights of the public are subject to limitation by judicial discretion and necessity." *Buchanan,* 823 A.2d at 151 (citing *Stenger v. Lehigh Valley Hospital Center,* 382 Pa.Super. 75, 554 A.2d 954, 957 (1989)).

Turning to the appropriate mandate, the majority first acknowledged that a bright-line test did not exist for determining whether release of the autopsy report would substantially hinder the criminal investigation. Rather than delineate such a test, the majority noted that the Commonwealth only had to make a specific showing that release of the report would have a substantial negative impact on its investigation.[1]

1. The majority cited two examples that would satisfy this standard: keeping witnesses from coming forth; and preventing investigators from verifying information that they receive from informants.

The majority further opined that even if the Commonwealth satisfied this standard, the trial court could only seal the report for a finite period of time; therefore, the majority would require the Commonwealth to continually return to the trial court to re-establish that the investigation was still ongoing, and that release of the information would still substantially hinder the investigation. The majority ordered the trial court on remand to conduct an *in camera* review of the autopsy report to determine whether the Commonwealth satisfied the above standard, and directed the trial court to determine whether a less restrictive means, such as redaction, would be adequate to protect the investigation rather than sealing the report in its entirety.

Appellant primarily contends that Section 1251's unambiguous language provides no exceptions to its mandate that all official records of a coroner be lodged with the county prothonotary for purposes of public inspection within thirty days of the close of each calendar year. Appellant asserts that the panel majority engaged in "an act of judicial legislating" in holding that trial courts possess inherent powers, under appropriate circumstances, to prevent the release of autopsy reports beyond the statutory period announced in Section 1251. Appellant submits that the Superior Court's holding is contrary to the Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.*, and this Court's precedent regarding statutory construction. *See, e.g., Gustine Uniontown Associates, Ltd. v. Anthony Crane Rental, Inc.*, 577 Pa. 14, 842 A.2d 334 (2004). Specifically, appellant posits that Section 1251 is unambiguous; that the panel majority erred by interpreting this provision based on public policy without any predicate, specific finding of ambiguity; that the General Assembly considered but failed to adopt an amendment that would have created a criminal investigation exception to Section 1251; and that coroners' records are not judicial documents and, therefore, they are not subject to common law principles. Moreover, appellant contends that the panel majority's decision is in direct conflict with the prior Superior Court panel decision in *Dillon*, 449 Pa.Super. 559, 674 A.2d 735.

The Commonwealth's responsive argument is straightforward. The Commonwealth notes, as the Superior Court panel majority did, that the common law recognizes a trial court's inherent power to prevent the release of certain information in order to prevent a detrimental effect on an ongoing criminal investigation. The Commonwealth cites the same analogous examples as the panel majority did: sealing information documented in search and arrest warrants, and keeping certain judicial proceedings closed to the public. Moreover, the Commonwealth submits that *Dillon*, 449 Pa.Super. 559, 674 A.2d 735, is factually distinguishable from the case *sub judice*.

Amicus Curiae Pennsylvania District Attorneys Association has also filed a brief, supporting the Commonwealth's position. Amicus argues that Section 1251 cannot be viewed as a prophylactic rule and, thus, a trial court should be permitted to review and respond to the circumstances on a case-by-case basis. Amicus submits that when an adverse impact on an ongoing criminal investigation can be demonstrated by the Commonwealth, a trial court must be able to grant protective injunctive relief to avoid premature disclosure of investigative information contained in an autopsy report. In the instant case, amicus argues that the Commonwealth demonstrated such an adverse impact on the homicide investigation through averments and testimony presented at the hearing before the trial court.[2]

Amicus notes that a blanket rule requiring release of all the information contained in an autopsy report, regardless of the damaging effects on an ongoing homicide investigation or the public interest, cannot be the result intended by the General

---

**2.** Amicus posits that at the hearing, the Commonwealth submitted extensive testimony in support of its averments that the release of the autopsy report would hinder its investigation, most notably by alerting the perpetrator and/or suspects to information known by the investigative team; by depriving the investigators of the opportunity to test the veracity of statements offered by alleged witnesses or informants regarding the details surrounding the homicide known only to the perpetrator and investigative team; and by compromising the investigative team's ability to obtain future search warrants based on the information contained in the report. Brief of Amicus at 20–21; *see* N.T. Motion to Seal Coroner's Report, 2/8/02, at 4, 6, 9–10, 16, 61–63.

Assembly in outlining the coroner's duties in Section 1251 because such a result is absurd or unreasonable. Moreover, amicus contends that the duties of coroners set forth in Section 1251 do not ineluctably abrogate recognized common law limitations upon disclosure of public records when disclosure would result in harm to the Commonwealth—which in this case would be harm to an ongoing homicide investigation—citing the examples invoked by the panel majority.[3]

Appellant is correct in its argument that the text of Section 1251 is plain and unambiguous and that it does facially not provide for any exceptions to its general rule of disclosure. This "unambiguous" argument, however, is a double-edged sword, for Section 1251 just as plainly does not specifically address the situation presented in the instant case. Section 1251 appears in the County Code, as part of Article XII(B), which governs coroners. By its plain terms, it speaks to the public disclosure obligations of the county coroner with respect to "official records." And, in setting forth the duties of coroners, it is certainly written in mandatory terms, setting forth what the coroner "shall" do.

However, Section 1251 does not address, much less prohibit, the right of the Commonwealth to petition the trial court to seal a particular record of the county coroner beyond the yearly statutory reporting period. Additionally, the provision neither addresses, nor prohibits, the authority of a court in a given case or controversy to seal a record of the coroner beyond the statutory reporting period when the interest of justice so requires. By the same plain language analysis invoked by appellant, if the General Assembly in this statute

---

**3.** Specifically, amicus cites Pennsylvania Rule of Criminal Procedure 573(F), which permits a trial court to enter a protective order denying, restricting, or deferring discovery or inspection of material in a criminal case after charges have been filed. Amicus also cites Pennsylvania Rule of Criminal Procedure 211, which permits a trial court to seal a search warrant affidavit, at the request of a district attorney, "upon good cause shown," and cites this Court's decision in *Fenstermaker*, 515 Pa. 501, 530 A.2d 414, for the principle that a trial court has the authority to seal arrest warrant affidavits. In addition, amicus refers to the trial court's authority to seal the identity of a confidential informant. *See Commonwealth v. Bing*, 551 Pa. 659, 713 A.2d 56 (1998).

addressing the duties of county coroners intended to delimit the authority of courts of general jurisdiction, it would have done so in plain terms. Yet the statute does not address the powers of courts at all, and we believe that cannot be anything but significant.

Both Pennsylvania's common law and this Court's procedural rules, which are a product of experience, are replete with examples recognizing the Commonwealth's right to petition, and the trial court's authority to grant, the sealing of information in the course of an investigation or judicial proceedings. Two examples recognized by this Court's procedural rules include protective orders for pretrial discovery and inspection, and sealing search warrant affidavits. Thus, Rule 573(F), entitled "Protective Orders," provides, in relevant part:

Upon a sufficient showing, the court may at any time order that the discovery or inspection be denied, restricted, or deferred, or make such other order as is appropriate.

Pa.R.Crim.P. 573(F). Therefore, "upon a sufficient showing," a trial court may seal certain statements, documents, or other evidence from discovery or inspection at a point in a criminal proceeding well-beyond the investigative stage. *Id.* Additionally, Rule 211, entitled "Sealing Search Warrant Affidavits," provides that a district attorney can request that a search warrant affidavit be sealed "upon good cause shown." Pa. R.Crim.P. 211(A). Rule 211 also provides that the justice or judge sealing the affidavit must state the length of time it will be sealed, Pa.R.Crim.P. 211(C); that the affidavit must not be sealed for more than 60 days, unless the period is extended at the request of the district attorney, who may seek "an unlimited number of extensions" at 30–day intervals, Pa.R.Crim.P. 211(E),(G); and that the district attorney can delay providing the defendant a copy of the sealed affidavit for intervals of not more than 30 days up to the date of court arraignment. Pa.R.Crim.P. 211(H)(2).

Two examples of court-ordered sealings recognized at common law are the sealing of arrest warrant affidavits, *see Fenstermaker,* 515 Pa. 501, 530 A.2d 414, and the sealing of the identification of a confidential informant, *see Bing,* 551 Pa.

659, 713 A.2d 56. In *Fenstermaker*, this Court addressed public access to arrest warrant affidavits. There, the defendant was arrested, pursuant to warrants issued by a magistrate, for, *inter alia*, homicide and rape. The arrest warrants were issued on the basis of affidavits of probable cause executed by a police detective. Following the defendant's arraignment, a news organization filed a motion to intervene and a motion to inspect and copy the affidavits of probable cause. After balancing the defendant's rights under the fair trial guarantees of the Sixth Amendment against the public's right to information under the First Amendment, the trial court granted the motion to intervene, but denied the motion to inspect and copy. The Superior Court affirmed on appeal.

The news organization appealed to this Court. After acknowledging the precedent supporting "the importance of the public having an opportunity to observe the functioning of the criminal justice system," this Court noted that there is a presumption in favor of public access to judicial records and documents. *Fenstermaker*, 530 A.2d at 417–18 (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 602, 98 S.Ct. 1306, 1314, 55 L.Ed.2d 570 (1978)). We then determined that arrest warrant affidavits are "public judicial documents," but nevertheless held that "the right to inspect judicial documents is not absolute, and [trial] courts do have supervisory powers over their records and files." *Fenstermaker*, 530 A.2d at 418, 420 (citing *Nixon*, 435 U.S. at 597–99, 98 S.Ct. at 1311–13). This Court concluded that the decision—the weighing of the competing factors in a balancing approach—regarding access to arrest warrant affidavits "is one best left to the sound discretion of a trial court." *Fenstermaker*, 530 A.2d at 420.

In *Bing*, the defendant was arrested for selling drugs to undercover police officers. The defendant requested disclosure of the identity of the undercover officer's confidential informant, who was also an eyewitness to the drug transactions, in an attempt to support his claim of misidentification by the police. The Commonwealth opposed the motion and requested that the trial court seal the identity of the confidential informant due to a risk that the informant might be physically

harmed if his identity were revealed. This Court noted that it had adopted the guidelines articulated by the United States Supreme Court in *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), to guide trial courts in the exercise of their discretion in such cases. This Court stated the following:

> We believe that no fixed rule with respect to disclosure [of the confidential informant's identity] is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense.

*Bing*, 713 A.2d at 58 (quoting *Commonwealth v. Carter*, 427 Pa. 53, 233 A.2d 284, 287 (1967) (quoting *Roviaro*, 353 U.S. at 60–62, 77 S.Ct. at 628–29)). Thus, this Court authorized trial courts to employ a discretionary balancing approach in deciding whether to seal the identity of a confidential informant.

There is nothing in the plain language of Section 1251 that remotely suggests that the General Assembly was seeking to circumscribe the traditional and inherent authority of courts to take protective measures, including measures which would require sealing of otherwise public information, when it addressed the disclosure duty of coroners. Fidelity to the statute requires only a recognition that coroners are obliged to lodge their reports by the date certain set forth in the statute. The questions of the powers and duties of courts—which is the question we face—is a distinct one which is not addressed by the statute. Accordingly, we agree with the panel majority below that "our legislature [in enacting Section 1251] did not intend to eliminate [ ] [trial] courts' inherent power to limit the public's right of access to coroners' records 'by judicial discretion and necessity.' " *In re Buchanan*, 823 A.2d at 151 (citations omitted). We also recognize, as the panel majority did, that the power to seal is not unfettered, and we thus agree that, to warrant sealing in an instance such as this, there must be a showing by the Commonwealth "that the release of the report would substantially hinder an ongoing criminal investigation." *Id.*

Appellant's arguments against the balanced rule articulated below are unconvincing. Appellant notes that, on two occasions prior to the Superior Court's decision in this case, the General Assembly considered, but did not enact, possible amendments to Section 1251 that specifically would have precluded a coroner from releasing information that would compromise an ongoing criminal investigation. Although it is true that legislative failure to adopt an amendment to a statute can be considered in construing that statute, *see* *McDowell v. Good Chevrolet–Cadillac, Inc.*, 397 Pa. 237, 154 A.2d 497, 501–02 (1959), that principle of statutory construction is of little avail here. The fact remains, as we have explained above, that the statute as written does not purport to address the power of courts to seal a report in a case such as this. The failure to adopt this specific amendment could just as easily have resulted from a recognition that such an amendment was unnecessary given the inherent powers of the court. In any event, appellant's argument would require us to employ a construction principle to read a hidden meaning (or implied rejection) into the statute which is not suggested by its plain terms to which we are bound.

We also find that the panel majority's decision is not in conflict with the prior Superior Court panel decision in *Dillon*, 449 Pa.Super. 559, 674 A.2d 735. In *Dillon*, the decedent was killed by a shotgun blast to the chest while shooting clay pigeons. Following an autopsy, the death was initially ruled as accidental by the coroner. Nearly twenty years later, as a result of legal proceedings initiated by the coroner, the body of the deceased was exhumed, reautopsied, and reburied. The coroner concluded that the manner of death was homicide, but this second autopsy report was not released. Subsequently, the decedent's widow filed a petition requesting that the decedent's body be disinterred and reautopsied, and that the second autopsy report be disclosed. The trial court denied the request for a third autopsy, but granted the request that the second autopsy report be disclosed. The decedent's widow appealed the order denying exhumation and reautopsy, and

the Commonwealth cross-appealed the order directing disclosure of the second autopsy report to the widow.

On appeal, the Superior Court reversed the denial of exhumation and affirmed the order granting disclosure of the second autopsy report. Regarding the exhumation issue, the Commonwealth argued against an exhumation and reautopsy due to an ongoing criminal investigation, although the Commonwealth "conceded that exhumation and reautopsy would have no effect whatsoever on its efforts." *Id.* at 738. Accordingly, the panel held that the Commonwealth failed to make a showing that granting the request for exhumation and reautopsy would "impede, obstruct, or interfere" with the investigation. *Id.* As to the autopsy report issue, the Commonwealth argued against its release on the grounds that the report was protected by governmental privilege resulting from the ongoing criminal investigation. However, the Commonwealth did not submit any evidence that release of the report would actually adversely affect the criminal investigation. The panel held that the Commonwealth's claim of privilege was mooted by Section 1251's mandate, and that the provision "makes no exceptions for records connected with criminal investigations." *Id.*

Here, the panel majority held that *Dillon* was distinguishable because it "left open the question ... of whether an autopsy report must be released, even where doing so would substantially hinder an ongoing criminal investigation." *Buchanan,* 823 A.2d at 152. The majority noted that in *Dillon,* the Commonwealth advanced the argument that release of the autopsy report was privileged due to the ongoing criminal investigation, but that "it failed to show that granting the petition 'would in any way impede, obstruct or interfere with that investigation.'" *Id.* (quoting *Dillon,* 674 A.2d at 738). The majority's distinction of the Superior Court precedent in *Dillon* is sound. As the majority accurately noted, the Commonwealth in *Dillon* argued broad privilege, not that the release of the autopsy report would adversely affect the criminal investigation. Conversely, in the case *sub judice,* the Commonwealth's argument is bottomed on a claim that release

will compromise an ongoing homicide investigation. Therefore, *Dillon* is not controlling.

What remains to consider is the appropriate mandate. In its pleadings and at the hearing below, the Commonwealth offered what amounted to generic evidence concerning how release of the autopsy results could impede the homicide investigation. Thus, Coroner Ross testified that autopsy reports generally contain details of the scene of the homicide, including where the body was located, the positioning of the body, who was last seen or reported as being seen with the victim, the clothing on the body, the condition of the scene and what determinations the coroner was able to make based on that condition as to what may have occurred at the scene prior to the victim's death. N.T. Motion to Seal Coroner's Report at 4. Ross explained that autopsy reports also contain items not known to the general public that are the product of the coroner's investigation regarding medical, social, and physical history of the victim as well as the scene of the homicide. *Id.* at 6. Ross further testified that autopsy reports contain extremely detailed information that the pathologist discovers during the autopsy, including the cause of death and detailed observations on each section of the body. *Id.* at 17–18.

Detective Sergeant William DeFrancisco of the Altoona Police Department also testified at the hearing. Detective DeFrancisco testified that as part of a homicide investigation, the police use details contained in the autopsy report throughout the investigation. *Id.* at 62. He testified that the details could be used to identify the perpetrator and, during witness interviews, to determine the accuracy of the witness's information and credibility. *Id.* Specifically, he explained that some witnesses are more credible than others during an investigation and those witnesses who provide details of the homicide not known to the general public, but documented in the autopsy report, can enhance their credibility and bolster the veracity of their statements. *Id.* Detective DeFrancisco then offered an opinion that releasing the autopsy report in this case would hinder or jeopardize the ongoing police investigation. *Id.* at 63.

In determining that remand was appropriate, the Superior Court panel majority reasoned as follows:

> [I]t is not enough for the Commonwealth merely to assert that an investigation is ongoing. The Commonwealth must make a specific showing that the release of the report would have a substantial negative impact on its investigation—for example, by keeping witnesses from coming forth or preventing investigators from verifying information that they receive from informants.

*Buchanan,* 823 A.2d at 153. The panel majority noted that the trial court had failed to make specific findings of fact that would permit the Superior Court to determine whether release of Buchanan's autopsy report would actually substantially hinder or jeopardize the ongoing investigation. We believe the panel's approach is generally sound on this record. Upon remand, the trial court should determine whether the Commonwealth can establish that the release of the report in this case in fact poses a threat of substantially hindering or jeopardizing the ongoing investigation. In this consideration, the trial court may, pursuant to its broad discretionary authority, conduct an *in camera* review of the autopsy report, and consider additional evidence if proffered. Additionally, the trial court is free to determine whether a less restrictive means, such as redaction, is adequate to protect the Commonwealth's interests. Finally, if appropriate, the trial court may require an additional showing by the Commonwealth that continued sealing of the report for a reasonable period is required to ensure the integrity of the ongoing investigation.

For the foregoing reasons, we affirm the order of the Superior Court. The case is remanded to the trial court for proceedings consistent with this opinion. Jurisdiction relinquished.