**PENN JERSEY ADVANCE, INC., d/b/a Easton Publishing Company**

v.

**Scott GRIM, Lehigh County Coroner, Appellant.**

**The Morning Call, Inc. and Joseph McDonald**

v.

**Scott Grim, in his capacity as Lehigh County Coroner, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2006.

Decided Nov. 3, 2006.

Stuart T. Shmookler, Allentown, for appellant.

Douglas J. Smillie, Center Valley, for appellee, Penn Jersey Advance, Inc. d/b/a Easton Publishing Company.

Malcolm J. Gross, Allentown, for appellees, The Morning Call, Inc. and Joseph McDonald.

BEFORE: SMITH–RIBNER, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

Scott M. Grim, in his capacity as Lehigh County Coroner (Coroner), appeals two orders of the Court of Common Pleas of Lehigh County (trial court) directing Coro-

---

**1.** Act of August 9, 1955, P.L. 323, *as amended,* 16 P.S. §§ 1231–1260.

**2.** *It states:*
Every coroner, within thirty (30) days after the end of each year, shall deposit all of *his official records and papers* for the preceding year in the office of the prothonotary for the inspection of all persons interested therein. 16 P.S. § 1251 (emphasis added).

**3.** Although Officer Sollman was shot in Northampton County, the autopsy was direct-

---

ner to deposit with the Clerk of Courts of Lehigh County all of his official records and papers for the year 2005, including but not limited to an autopsy report for one Jesse Sollman. In this case we consider whether a coroner is required to file an autopsy report as part of his "official records and papers" under Section 1251 of the act referred to herein as the Coroner's Act,[1] 16 P.S. § 1251.[2]

On March 25, 2005, Jesse Sollman, an Easton police officer, was fatally shot inside police headquarters. Due to the nature of Officer Sollman's death, an autopsy was performed.[3] In September, the Coroner pronounced Officer Sollman's death to be a homicide. By letter dated February 6, 2006, Jim Deegan, Managing Editor of *The Express–Times,*[4] requested immediate review of the autopsy report. Joseph McDonald, a newspaper reporter with *The Morning Call,*[5] made a similar written request on February 6, 2006. The Coroner refused to produce the autopsy report on the ground that such reports are not part of the "official records and papers" that a coroner is required to deposit with the office of the prothonotary pursuant to Section 1251 of the Coroner's Act.

The publishers of the newspapers (Newspapers) each filed a complaint in mandamus and motion for peremptory judgment with the trial court seeking to compel the Coroner to deposit with the Clerk of Courts all of his official records

---

ed by the Coroner because Officer Sollman was pronounced dead at St. Luke's Hospital in Lehigh County.

**4.** *The Express–Times* is published by Appellee Penn Jersey Advance, Inc., d/b/a Easton Publishing Co.

**5.** *The Morning Call* is published by Appellee The Morning Call, Inc.

and papers for 2005, including the autopsy report for Officer Sollman. The trial court granted the Newspapers their requested relief in two separate orders dated March 24, 2006, and April 21, 2006.[6] The Coroner now appeals both of the trial court's orders.

On appeal,[7] the Coroner does not dispute that under Section 1251 of the Coroner's Act he is required to "deposit all of his official records and papers for the preceding year in the office of the prothonotary for the inspection of all persons interested therein." 16 P.S. § 1251. However, the Coroner maintains that autopsy reports are not part of his "official records and papers," and in support cites this Court's recent decision in *The Johnstown Tribune Publishing Co. v. Ross*, 871 A.2d 324 (Pa.Cmwlth.2005). The trial court declined to follow *Johnstown Tribune* and accepted Appellees' argument that *Johnstown Tribune* was implicitly overruled by the Pennsylvania Supreme Court in *Commonwealth ex rel. District Attorney of Blair County, In re Randy Buchanan*, 583 Pa. 620, 880 A.2d 568 (2005). We disagree with the trial court's interpretation of *Buchanan*.

This Court's decision in *Johnstown Tribune* is directly on point. In that case, a newspaper publisher filed a complaint in mandamus seeking to compel a coroner to disclose the autopsy report of a homicide victim. This Court held that, as a matter of law, autopsy reports are not part of the "official records and papers" required to be deposited for public inspection under Section 1251 of the Coroner's Act.

■ Our holding in *Johnstown Tribune* was premised upon basic principles of statutory construction as well as privacy concerns. A coroner's statutory duty under the Coroner's Act is to ascertain the cause and manner of suspicious deaths. *Johnstown Tribune*, 871 A.2d at 328. *See also* Section 1237 of the Coroner's Act, 16 P.S. § 1237 (describing a coroner's duties and the narrow purpose of a coroner's investigation); Section 1238 of the Coroner's Act, 16 P.S. § 1238 (requiring an autopsy only when the coroner's investigation is inconclusive as to cause and manner of death). Thus, the legislature's use of the word "official" in the phrase "official records and papers" is significant. It implies that there are "unofficial" records within the coroner's custody that are not subject to disclosure. It follows that the "official" records that a coroner must deposit with the prothonotary are those that state the cause of death and whether it was the result of criminal conduct. *Johnstown Tribune*, 871 A.2d at 328. We also determined in *Johnstown Tribune* that if autopsy reports were included as part of the "official" records, an irreconcilable conflict would arise between Section 1251 and Section 1236.1(c) of the Coroner's Act, which allows for the coroner to charge and collect

---

**6.** The trial court consolidated the two cases on March 27, 2006. The appeals have likewise been consolidated for review by this Court.

**7.** Peremptory judgment in a mandamus action may be entered only where no genuine issue of material fact exists, and the case is free and clear from doubt. *Council of City of Philadelphia v. Street*, 856 A.2d 893, 896 (Pa. Cmwlth.2004). Here, there are no disputed facts, and because the underlying issue is a question of law, this Court has plenary review of the trial court's order. *Id.* Further, mandamus is an extraordinary writ and is a remedy used to compel performance of a ministerial act or a mandatory duty. *Id.* In order to obtain a writ of mandamus, the petitioner must demonstrate: (1) a clear legal right to the performance of the ministerial act or mandatory duty, (2) a corresponding duty in the appellant to perform the ministerial act or mandatory duty, and (3) the absence of any other appropriate or adequate remedy. *Id.*

a fee of up to one hundred dollars ($100) for an autopsy report.[8] Finally, this Court noted that if autopsy reports were to become part of the official record, much more than the cause and manner of death could be revealed to the public, such as potentially privileged information related to the decedent's medical history and graphic photographs taken during the autopsy. *Id.* at 329.

The newspaper publisher in *Johnstown Tribune* relied on two Superior Court cases that this Court rejected as neither persuasive nor binding. In the first, *In re Dillon*, 449 Pa.Super. 559, 674 A.2d 735 (1996), decedent's widow petitioned for disinterment and reautopsy of her deceased husband, whose death had been ruled a homicide by the coroner. Petitioner also sought discovery of the autopsy report that formed the basis of the coroner's conclusion. The Commonwealth challenged disclosure of the autopsy report and argued that because there was an ongoing criminal investigation into decedent's death, all such documentary evidence was protected by governmental privilege. The Superior Court rejected the Commonwealth's claim as moot, citing Section 1251 of the Coroner's Act and noting that the statute makes no exceptions for records connected with criminal investigations. *Id.* at 738. We declined to follow *In re Dillon* in *Johnstown Tribune* because the Superior Court's decision was not "premised upon even a cursory statutory analysis of the Coroner's Act," or any consideration of the duties and interests of a coroner with respect to disclosure of autopsy reports. *Johnstown Tribune*, 871 A.2d at 330.[9]

In the second Superior Court case, *Commonwealth ex rel. District Attorney of Blair County, In re Randy Buchanan*, 823 A.2d 147 (Pa.Super.2003) (*Buchanan I*), a newspaper requested that the coroner release the autopsy report of a murder victim. The Commonwealth sought a protective order that the report remain sealed since release of certain information contained in the report could hinder its criminal investigation. The trial court denied the Commonwealth's request for injunctive relief and directed that a copy of the autopsy report be made available to petitioner.

On appeal, the Superior Court began its analysis by reaffirming its earlier decision in *In re Dillon* interpreting " 'all of [the

---

**8.** We explained as follows:

Section 1236.1 was enacted in 1990; therefore we may presume that the legislature was aware of the disclosure requirements of Section 1251, which was enacted thirty-five years earlier. If the legislature intended that autopsy reports fall under the rubric of "official records and papers" for purposes of Section 1251, this allowance for fees in Section 1236.1(c) would make no sense. No one would pay this fee to a coroner if the autopsy report was already available at the prothonotary's office. We refuse to interpret Section 1251 in such a way that would effectively render meaningless Section 1231.1(c), which was adopted later in time.

*Johnstown Tribune*, 871 A.2d at 329.

**9.** We explained:

Although we have the utmost respect for our sister court, we must point out that its rote invocation of Section 1251 was not supported by an analysis of Section 1251. The *Dillon* court's use of Section 1251 to resolve a discovery dispute does not comport with the plain language and intent of the Coroner's Act. Moreover, because the party seeking disclosure of the report was the decedent's widow, the *Dillon* court was *not confronted with the privacy concerns raised by the Coroner in the present case.* Perhaps the Superior Court reached the right result on the facts of *Dillon;* however, Section 1251 was not necessary to support that conclusion.

*Johnstown Tribune*, 871 A.2d at 330 (emphasis added).

coroner's] official records' in [Section 1251] as including autopsy reports." *Id.* at 149 (quoting *In re Dillon,* 674 A.2d at 739). The court then carved out an exception to *In re Dillon,* allowing for a trial court to seal an autopsy report as long as the Commonwealth could demonstrate that releasing the report would substantially hinder an ongoing criminal investigation, and remanded the matter for further findings on the Commonwealth's position. In *Johnstown Tribune,* we rejected the newspaper publisher's reliance on *Buchanan I* because the Superior Court's analysis in that case was no more compelling than that in *In re Dillon* on the meaning of Section 1251; neither decision was premised upon even a cursory statutory analysis of the Coroner's Act.

The Pennsylvania Supreme Court granted allowance of appeal in *Buchanan I* and heard argument on September 20, 2004. The Court issued its decision on August 15, 2005, affirming the Superior Court. *Commonwealth ex rel. District Attorney of Blair County, In re Randy Buchanan,* 583 Pa. 620, 880 A.2d 568 (2005) (*Buchanan II*). Appellees contend, and the trial court agreed, that *Buchanan II* implicitly overruled this Court's decision in *Johnstown Tribune.* We disagree.

A fair reading of *Buchanan II* indicates to us that the Supreme Court avoided, perhaps intentionally, the issue germane to the present case. The Court began its analysis by noting that the panel in *Buchanan I* had relied on *In re Dillon* for the proposition that the phrase "official records and papers" in Section 1251 encompasses autopsy reports. The Court observed that "[t]his interpretation *is certainly reasonable,* as the phrase 'official records and papers' is broadly stated ... *and the parties do not dispute that autopsy reports are covered material."* *Buchanan II,* 583 Pa. at 624, 880 A.2d at 571 (emphasis added) (citation omitted). Significantly, the *Buchanan II* court did not expressly adopt the Superior Court's interpretation of Section 1251. Indeed, the Court did not have to consider the issue at all since the parties in *Buchanan,* in stark contrast to the litigants in the present case, agreed that autopsy reports were covered material.[10]

█ The *Buchanan* and *In re Dillon* decisions are also distinguishable from the case *sub judice* in terms of the legal issues driving the litigation. *Buchanan* and *In re Dillon* addressed the balance between the public's interest in information about the cause and manner of a decedent's death and the Commonwealth's interest in maintaining the confidentiality of such information during an ongoing criminal investigation. In addressing that issue, the *Dillon* court simply began with the premise that autopsy reports are "official records and papers" of the coroner under Section 1251, a premise assumed without any analysis of the Coroner's Act. By contrast, *Johnstown Tribune* and the case at bar deal squarely with the meaning of Section 1251 of the Coroner's Act and exactly what types of documents the legislature intended to include within the rubric of "official records and papers." Today we reiterate our holding in *Johnstown Tribune* that a coroner's autopsy reports are not among the "official records and papers" he must deposit with the prothonota-

---

10. It also bears noting that *Buchanan II* was decided on August 15, 2005, nearly five months after this Court published its opinion in *Johnstown Tribune.* Although the Supreme Court is obviously not bound by a decision of the Commonwealth Court, the Court certainly would have questioned, if not expressly overruled, our holding in *Johnstown Tribune* if it conflicted in any way with *Buchanan II.*

ry under Section 1251 of the Coroner's Act.

For the foregoing reasons, we reverse the orders of the trial court granting peremptory judgment and mandamus relief in favor of Appellees.

### ORDER

AND NOW, this 3rd day of November, 2006, the orders of the Court of Common Pleas of Lehigh County in the above-captioned matter, dated March 24, 2006, and April 21, 2006, are REVERSED.